**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)**

| | |
|---|---|
| **GOOD 'NUFF GARAGE, LLC *DBA* GNG MOTORSPORTS**<br>       **Plaintiff,** | |
| **v.** | **Civil Action No. 3:21-cv-571** |
| **COLIN MCCULLEY, KATE VEHRS, and CHESTER DOG ENTERPRISES LLC,** | **Jury Trial Demanded** |
| **Defendants.** | |

**VERIFIED COMPLAINT AND PETITION
FOR PRELIMINARY AND PERMANENT INJUNCTION**

Plaintiff Good 'Nuff Garage, LLC *dba* GNG Motorsports ("Plaintiff" or "GNG Motorsports"), by and through undersigned counsel, respectfully submits this Verified Complaint and Petition for Preliminary and Permanent Injunction[1] against Defendants Colin McCulley ("McCulley"), Kate Vehrs ("Vehrs"), and Chester Dog Enterprises LLC ("Chester Dog"), stating as follows:

## NATURE OF ACTION

1.      GNG Motorsports bring this action against Defendants seeking damages and preliminary and permanent injunctive relief to address and stop Defendants' willful and egregious violations of law.

2.      As explained below, Defendants McCulley and Vehrs, former employees of GNG Motorsports breached their fiduciary duties owed to GNG Motorsports.  Specifically, Defendant

---

[1] Plaintiff will file its Motion for Preliminary Injunction this same day.

McCulley, during his employment, solicited employees to resign their employment and solicited customers to leave GNG Motorsports in order to start a competing business.  In addition, Defendants McCulley and Vehrs failed to account for numerous of Plaintiff's parts and inventory, for which Plaintiff did not receive any compensation, in breach of their responsibilities as employees and, as a result, their fiduciary duties.

3.     Defendants McCulley, Vehrs, and Chester Dog falsely used and continue to use Plaintiff's "GNG" and "GNG Motorsports" marks, which has caused and will continue to cause confusion, mistake and to deceive the relevant public by suggesting that Defendants' products and services are authorized, sponsored, approved by, or are affiliated with Plaintiff.  By reason of Defendants' acts alleged herein, Plaintiff has suffered, and continues to suffer, loss of customers, monetary damages, and loss of control of the goodwill associated with the "GNG" and "GNG Motorsports" marks.  Such actions constitute a false designation of origin and trademark infringement under the Lanham Act (15 U.S.C. § 1125(a)), as well as unfair competition and a violation of the Virginia Trademark and Service Mark Act, Virginia Code § 59.1–92.12.

4.     In addition, Defendant McCulley and/or Defendant Chester Dog accessed Plaintiff's business Facebook page and Instagram page, after Defendant McCulley's employment ended and without authorization from Plaintiff, with the intent to steal the accounts and/or use the "GNG" and "GNG Motorsports" marks for Defendants' benefit with the intent to harm Plaintiff.  Since then, despite multiple cease and desist letters, Defendant McCulley and/or Defendant Chester Dog (through Defendant McCulley) has refused to return and/or assign the admin credentials to Plaintiff's Facebook page.  Defendant McCulley and/or Defendant Chester Dog (through Defendant McCulley) also deleted Plaintiff's Facebook business page, causing

irreparable harm and the loss of customers.  As a result, Defendants McCulley and Chester Dog have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

5.     Further, Defendants knowingly and intentionally interfered with Plaintiff's contractual expectancy with its customers and prospective business with potential customers, by, among other things, soliciting customers to leave Plaintiff's services for the services offered by Defendants, falsely using and promoting the "GNG" mark as Defendants' own mark in order to usurp and steal existing and potential customers, soliciting employees of Plaintiff to leave Plaintiff, leaving Plaintiff without a staff to service existing customers, and misrepresenting to customers, vendors, and other third parties that Plaintiff closed its business.

6.     Defendants' activities have irreparably harmed and, if not enjoined, will continue to harm Plaintiff and the general public, which has an interest in being free from confusion, mistake, and deception.

7.     By reason of Defendants' acts, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief.

8.     In addition, Plaintiff is entitled to actual damages, consequential damages, statutory damages, attorneys' fees and costs, and punitive damages based on Defendants' unlawful conduct.

## JURISDICTION

9.     This Court has jurisdiction of the claims in this action pursuant to 28 U.S.C. § 1331, as this action contains federal questions presented by 15 U.S.C. § 1125 and 18 U.S.C. § 1030.

10.     This Court has supplemental jurisdiction over the claims in this Verified Complaint that arise under the common and statutory law of the Commonwealth of Virginia pursuant to 28 U.S.C. § 1367(a).

11.     Venue is proper in this Court as acts and/or omissions of Defendants from which Plaintiff's claims arise, occurred within Hanover County, Virginia which is within the Richmond Division of the Eastern District of Virginia.  *See* 28 U.S.C. §1391(b)(2).

## PARTIES

12.     Plaintiff GNG Motorsports is a limited liability company, organized under Virginia law, with a principal office address 2933 Kenmore Road, Richmond, Virginia 23225, previously operating a motor vehicle shop located at 11201 Hopson Road, Suites B & C, Ashland, Virginia 23005.

13.     Defendant McCulley is a former employee of GNG Motorsports and individual residing at 1300 McDonough St Apt 6, Richmond, Virginia, 23224.

14.     Defendant Vehrs is a former employee of GNG Motorsports and, on information and believe, is an individual residing at 8209 Rambler Drive, Henrico, Virginia 23228.

15.     Defendant Chester Dog is a limited liability company, organized under Virginia law, with a principal office address of 1300 McDonough St Apt 6, Richmond, Virginia, 23224, and using United States Corporation Agents, Inc. as its registered agent, which has an office address of 4445 Corporation Ln Ste 259, Virginia Beach, Virginia, 23462.

16.     On information and belief, Defendant Chester Dog does business as GNG Performance.

17.     On information and belief, Defendant McCulley is a member and/or the sole member of Chester Dog.

18.     Upon information and belief, Defendant Vehrs is an employee and/or member of Chester Dog.

**FACTUAL BACKGROUND**

19.    Plaintiff GNG Motorsports is a full-service automotive repair, seller, and maintenance company, specializing in Subaru maintenance, modification, and repair.

20.    Since on or around February 1, 2017, GNG Motorsports has established itself as go-to service provider for individuals needing repair, parts, and products for Subaru motorsport vehicles within Richmond, Virginia, the surrounding area, and throughout the Commonwealth of Virginia.

21.    Since that time, Plaintiff operated a shop located at 11201 Hopson Road, Suites B & C, Ashland, Virginia 23005, to provide its services to its numerous dedicated customers.

22.    Since January 20, 2017, GNG Motorsports has continually used the marks "GNG" and "GNG Motorsports" in connection with its business.

23.    GNG Motorsports is a registered fictitious name of Good 'Nuff Garage, LLC with the Commonwealth of Virginia.  *See* Certificate of Assumed or Fictitious Name, attached hereto as **Exhibit A**.

24.    GNG Motorsports has grown its business since 2017 and established goodwill in the community based on its business practices, customer service, and marks "GNG" and "GNG Motorsports."

25.    Since 2017, Plaintiff has consistently and exclusively used the "GNG" and "GNG Motorsports" marks in commerce in association with its promotions, products and services.

26.    In addition, Plaintiff has consistently and exclusively used the "GNG" and "GNG Motorsports" marks to communicate with customers, vendors, and all others doing business with

Plaintiff, including without limitation, utilizing the mark on email communication, written documents, and other forms of communication.

27.    Given Plaintiff's specialization, its customers are often returning customers who are passionate about Subaru motorsports and who rely on Plaintiff's goodwill and the "GNG" and "GNG Motorsports" marks.

28.    GNG is an abbreviation for Good 'Nuff Garage, LLC, the owner of the GNG mark.

29.    As such, it is an arbitrary or otherwise inherently distinctive mark in commerce.

30.    Plaintiff also continuously utilizes the "GNG" and "GNG Motorsports" marks with the following graphic:



31.    Indeed, from the street, the GNG mark is apparent for customers:



32.    Plaintiff also owns the website and domain of www.gngmotorsports.com.

33.     In addition, Plaintiff owns and maintains a business Facebook page https://www.facebook.com/gngmotorsports/.

34.     The Facebook page utilized Plaintiff's phone number, the shop's address, promoted the business, engaged with customers, and is specifically described as a business page for Plaintiff, utilizing the marks "GNG" and "GNG Motorsports."  In the about section, the page included the following:

> GNG Motorsports (previously Good Nuff Garage) is a newly formed repair facility that specializes in Subaru maintenance, modification, and repair. GNG is passionate about the continuing growth and success of the community both locally and abroad. Please follow the page and contact us with any questions regarding your Subaru or performance import vehicle.

35.     Plaintiff utilized the Facebook page for promotions, including paying Facebook for certain promotions.  Plaintiff maintains invoices demonstrating that it paid Facebook for certain promotions on its Facebook business page.  A true and correct copy of Plaintiff's transaction history with Facebook related to its promotions, is attached hereto as **Exhibit B**.

36.     In addition, Plaintiff used the "GNG" and "GNG Motorsports" marks on merchandise, such as clothing and other products.  *See* true and correct images of merchandise, attached hereto as **Exhibit C**.

37.     Plaintiff emphasizes the GNG in its logo and marketing and on its Facebook page. (*See* ¶ 34 above).   In fact, customers regularly refer to Plaintiff as GNG.  *S*ee also Exhibit C.

38.     As a result of its continuous and exclusive use of the "GNG" and "GNG Motorsports" marks in commerce for numerous years, Plaintiff's marks have become well and favorably known throughout Virginia and, consequently, Plaintiff has acquired common law trademark rights in and to these marks.

39.     Defendant McCulley was an employee of Plaintiff as the Shop Manager.  Although Defendant McCulley considered becoming an owner of the business, at no point in time did Defendant McCulley have an ownership stake in Plaintiff or was a member of Plaintiff.

40.     As Shop Manager, Defendant McCulley was responsible for managing the day-to-day operations of the shop, including without limitation, maintaining and safekeeping the inventory and products of Plaintiff, managing the staff, overseeing scheduling and job completion, and managing GNG's social media presence.

41.     As Shop Manager, while employed, Defendant McCulley owed GNG a duty of loyalty to Plaintiff under Virginia law.

42.     Defendant Vehrs was an employee of Plaintiff as the Service Writer.  As Service Writer, Defendant Vehrs' responsibilities included without limitation, maintaining and safekeeping the inventory and products of Plaintiff, ordering and coordinating delivery of products and inventory, creation of work orders and invoices, and handling customer payments.

43.     Defendant Vehrs, as an employee of and the Service Writer for Plaintiff, owed a duty of loyalty to Plaintiff under Virginia law.

44.     As a consequence of their employment with Plaintiff, Defendants McCulley and Vehrs had access to Plaintiff's confidential information, including without limitation, customer lists and contact information, vendor agreements, inventory, and pricing.

45.     Before Plaintiff formally organized as a business, Defendant McCulley created a Facebook page under the name "Good Nuff' Garage." Given that Facebook requires a Facebook account to create a business page, Defendant McCulley used his personal Facebook account to create the "Good Nuff' Garage" Facebook page.

46.     After formal organization of the business, as part of his job responsibilities, Defendant McCulley became responsible for Plaintiff's social media and assisted Plaintiff in transferring the "Good Nuff' Garage" page to Plaintiff's business Facebook page, which included changing the "Good Nuff' Garage" Facebook page to Plaintiff's business Facebook page under the name "GNG Motorsports".

47.     According to Facebook, Facebook "[p]ages are for businesses, brands, organizations and public figures . . .." *See* https://www.facebook.com/help/104002523024878/

48.     At all times since Plaintiff organized as a business, the Facebook page was used for Plaintiff's business purposes, including Plaintiff's payment of promotions through Facebook, and utilized Plaintiff's marks "GNG" and "GNG Motorsports." *See* Exhibit B.

49.     On or about June 14, 2021, Defendant McCulley approached the owner and sole member of Plaintiff, Joshua Barnhill, about purchasing GNG Motorsports.

50.     After Mr. Barnhill disclosed the monetary commitment required to purchase GNG Motorsports, Defendant McCulley became upset.

51.     Thereafter, on July 12, 2021, Defendant McCulley resigned his position as Shop Manager.

52.     Prior to his resignation, however, Defendant McCulley solicited two other employees, Adam Meade (a technician) and Defendant Vehrs, to resign their employment from Plaintiff.

53.     In fact, Defendant McCulley posted on Plaintiff's Facebook business page that Defendant Vehrs had already resigned – prior to Defendant Vehrs even giving notice of resignation to the Plaintiff.

54.     Defendant McCulley solicited the employees to resign their employment with Plaintiff to start a competing business, taking advantage of Plaintiff's goodwill and using Plaintiff's "GNG" and "GNG Motorsports" marks.

55.     Within 24 hours of Defendants McCulley and Vehrs resigning, numerous customers of Plaintiff removed their vehicles from Plaintiff's shop located at 11201 Hopson Road Suites B&C, Ashland, Virginia 23005, resulting in Plaintiff losing significant business.

56.     Certain of those customers specifically removed their vehicles to take their vehicles to Defendant McCulley for service.

57.     On information and belief, Defendant McCulley solicited the customers to remove their vehicles prior to Defendants McCulley and Vehrs giving their notice of resignation to Plaintiff.  On information and belief, prior to resigning, Defendant Vehrs assisted Defendant McCulley in his plan to resign employment and start a competing business using Plaintiff's existing GNG mark and goodwill.

58.     Because two of the employees who resigned (Mr. Meade and Defendant McCulley) were the only auto technicians able to service vehicles, Plaintiff was forced to delay servicing customers and, as a result, lost substantial business.

59.     To date, based on the owner's review of Plaintiff's financial statements and books, Plaintiff has lost $97,000 in revenue and $14,500 in lost profit – a number that continues to increase.

60.     In addition, Plaintiff has had to return at least $22,411.05 to customers and that number continues to increase.

61.     After his resignation, Defendant McCulley retained the administrative ("admin") credentials to Plaintiff's business Facebook page and even posted on the page after his resignation

from GNG Motorsports.  *See* a true and correct copy of a screenshot of Plaintiff's business Facebook page as of July 12, 2021, attached hereto as **Exhibit D**.  Notably, Defendant McCulley specifically wrote that the post was "a personal post by Colin."

62.     Instead of returning the admin rights to Plaintiff, after his resignation (when he no longer had authorization to manage the Company's Facebook page) Plaintiff continued to use the admin credentials for Plaintiff's Facebook page.

63.     Without authority, Defendant McCulley (i) created a public post on Plaintiff's Facebook page after his resignation; and (ii) changed the contact email on the Facebook page to gngperformance1@gmail.com, which is not Plaintiff's email, and which utilized the GNG mark. *See* Exhibit D.

64.     On July 13, 2021, the sole owner of GNG Motorsports, Joshua Barnhill, emailed Defendant McCulley asking that he return the admin credentials of Plaintiff's Facebook page and Defendant McCulley has failed to do so to this day.  *See* true and correct copy of the July 13, 2021 Email, attached hereto as **Exhibit E**.

65.     Plaintiff's business Facebook page had thousands of comments and over one thousand "likes" from customers and/or online users, establishing the goodwill Plaintiff has created with its business.  In fact, as of July 12, 2021, 1,712 persons "liked" the Facebook page and 1,774 followed Plaintiff's Facebook business page.  *See* Exhibit D.

66.     In addition, on or about August 5, 2021, Defendant McCulley, through the email address gngperformance1@gmail.com attempted to login to Plaintiff's Instagram business account.  Plaintiff was able to stop Defendant McCulley's attempt to steal Plaintiff's Instagram account by submitting a fraud claim with Instagram.  *See* true and correct copy of an email from Instagram, attached hereto as **Exhibit F**.

67.     On July 17, 2021, outside counsel for Plaintiff sent Defendant McCulley a cease and desist letter, demanding that he cease his unlawful activities, including without limitation, returning Plaintiff's admin rights to its Facebook business page or otherwise grant full admin rights to Plaintiff's sole owner, and to cease and desist from utilizing the GNG name and brand in any capacity and holding out himself to be working on behalf of GNG.  *See* true and correct copy of the July 17, 2021 Letter, attached as **Exhibit G**.

68.     Instead of returning the admin rights, Defendant McCulley deleted Plaintiff's business Facebook page, causing further harm to Plaintiff.  *See* true and correct copy of July 26, 2021 Email, attached as **Exhibit H**.

69.     In addition, on July 20, 2021, Defendant McCulley stated to outside counsel that "I am not currently operating any business using that information," in response to Plaintiff's request to cease and desist from using the "GNG" and "GNG Motorsports" marks.  *See* true and correct copy of July 20, 2021 Email, attached as **Exhibit I**.

70.     Despite this assertion, Defendants McCulley and Vehrs, either individually or through the company Defendant Chester Dog, continue to use the "GNG" and "GNG Motorsports" marks and operate a business under the name of "GNG Performance".

71.     Specifically, in or around August 2021, Defendants McCulley and Vehrs, either individually or through the company Defendant Chester Dog, created an account with one of Plaintiff's many vendors, Hyman Bros Subaru, under the name GNG Performance.

72.     That GNG mark, being so similar to Plaintiff's mark, caused the vendor to mistakenly charge Plaintiff with a $552.56 purchase.

73.     In addition, (i) on or about August 7, 2021, AutoZone also charged Plaintiff in the amount of $39.91; and (ii) Ecotech Import Auto Repair charged Plaintiff in the amount of

$2,226.14 for services related to GNG Performance due to the similarities with Plaintiff's name. A true and correct copy of the Ecotech Import Auto Repair invoice is attached hereto as **Exhibit J**.

74.     In or around August 2021, the Defendants, either individually or collectively, created a Facebook business page under the name "GNG Performance," utilizing the GNG mark. *See* https://www.facebook.com/gngperformance/ and a true and correct copy of the page as of August 30, 2021, attached hereto as **Exhibit K**.

75.     Defendants created the Facebook page to imply that they are part of or continuing the business of Plaintiff GNG Motorsports, utilizing the GNG mark for the same exact services provided by Plaintiff, and using the goodwill of Plaintiff to steal its customer base and confuse the public, including Plaintiff's customers, potential customers, and vendors.

76.     By deleting Plaintiff's business Facebook page and then creating their own Facebook page, Defendants have stolen numerous existing customers and potential customers from Plaintiff.

77.     Shortly after Defendants McCulley and Vehrs' resignation from employment, Plaintiff's business neighbor, Cambo Auto Center, LLC, which operates a vehicle repair and service business in the garage next to Plaintiff at 11201 Hopson Rd Suite A, Ashland, Virginia 23005, approached Plaintiff about purchasing Plaintiff's inventory.

78.     Given Defendants' misconduct, and as a result, inability to service existing customers, Plaintiff made the decision to sell its existing inventory and parts at an undervalued price to its business neighbor, Cambo Auto Center, LLC.  Plaintiff also transferred its lease to its shop to Cambo Auto Center, LLC.  Specifically, Plaintiff's landlord permitted Plaintiff to

13

terminate its lease early based on Cambo Auto Center, LLC entering into a new lease with the landlord. Plaintiff intends to lease new space to service its customers.

79.      Cambo Auto Center, LLC, however, has since permitted Defendants (either individually or through Chester Dog), to lease and/or otherwise use Plaintiff's prior garage to start a repair and service shop using the "GNG" mark.

80.      In doing so, Defendants have falsely claimed that they are continuing the business of GNG Motorsports in an effort to steal Plaintiff's existing and prospective customers.

81.      On August 8, 2021, without Plaintiff's authorization or approval, the Defendants posted a mark nearly identical to the mark of GNG Motorsports:



82.      On August 9, 2021, the Defendants (either individually or through Chester Dog) posted as follows on the GNG Performance Facebook page, implying that they are/were owners of GNG Motorsports:

Everything is (type) RAlright..

We are booking , scheduling , and catching up to get back in the swing of quality service to the Subaru community local and beyond. Some things have changed , but it is only up from here! Contact this page , share with your friends , and email when you're ready! gngperformance1@gmail.com

*See* Exhibit K.

83.     In addition, in an August 15, 2021 post, Defendants (either individually or through Chester Dog) stated "GNG and IAG to the rescue!" in regard to certain services performed for a customer, again utilizing the GNG mark.  *Id*.

84.     On August 17, 2021, Defendants (either individually or through Chester Dog) posted on the GNG Performance Facebook page, stating "[p]lease notice the changes to the hours and email. We will have a phone number available when backlog is a bit more managed."  This again implies that Defendants are part of GNG Motorsports, which they are not.  *Id*.

85.     On August 20, 2021, Defendants (either individually or through Chester Dog) posted on the GNG Performance Facebook page that they have a new phone number, specifically stating: "If you currently have either Colin or Kate's personal contact information and you want to reach them regarding service - PLEASE USE THIS NEW NUMBER INSTEAD."  Colin and Kate refer to Defendants McCulley and Vehrs.  *Id*.

86.     In addition, in or around August 2021, Defendants (either individually or through Chester Dog) attempted to interfere with GNG's existing contracts, by contacting GNG vendors and informing them that GNG has closed and that Defendants (either individually or through Chester Dog) were taking over ownership.

87.     On information and belief, Defendants took such action to interfere with Plaintiff's business, vendor relationships, and current and prospective customers.

88.     On or around August 10, 2021, on information and belief, Defendant McCulley and/or Vehrs falsely notified one of Plaintiff's vendors, Turn 14, that Plaintiff had shut down its business.

89.     In addition, on or around August 17, 2021, on information and belief, a woman called Turn 14 and identified herself as "Jen," stating that she worked for Plaintiff and then

attempted to gain access to the GNG Motorsports' account with Turn 14.  When Turn 14 reached out to Plaintiff, Plaintiff informed Turn 14 that it had not shut down its business and that it did not have an employee named Jen.

90.    On information and belief, Defendants, either individually or collectively, falsely used the name Jen in an attempt to take over Plaintiff's vendor agreement and payment terms.

91.    Thereafter, Turn 14 received paperwork from Defendant Chester Dog, utilizing the email gngperformance1@gmail.com to start a new account, again utilizing the "GNG" mark.  A true and correct copy of an email exchange between Turn 14 and Plaintiff is attached hereto as **Exhibit L**.

92.    On information and belief, Defendants, either individually or collectively, also falsely informed another one of Plaintiff's vendors, WorldPac, that Plaintiff had shut down and attempted to take over Plaintiff's vendor agreement and payment terms.

93.    On August 20, 2021, a former customer of GNG Motorsports sent GNG Motorsports $2,000 for services that GNG Motorsports did not perform.  The customer, however, informed Plaintiff that Defendant Vehrs sent him the wrong address and, in fact, he was trying to pay GNG Performance for services.  A true and correct copy of that email is attached hereto as **Exhibit M**.

94.    In addition, during Defendant McCulley's employment with Plaintiff, in or around May 2020, Plaintiff directed Defendant McCulley to file an abandoned vehicle claim related to a prior customer's vehicle.  Defendant McCulley, however, never submitted that claim.

95.    Instead, on information and belief, Defendant McCulley purposely delayed the vehicle claim process or contacting the owner.  Then, after resigning his employment with Plaintiff, Defendant McCulley convinced his friend Joey Neuburger to purchase the vehicle and

got in contact with the owner so Plaintiff could not claim the property, usurping Plaintiff's opportunity.

96.     In addition, Plaintiff has uncovered that Defendants McCulley and Vehrs failed to account for parts during their employment with Plaintiff and, on information belief, used some of the missing inventory for their own benefit or benefit of friends and family.  Specifically, since on or around August 2019, Defendants failed to account for numerous parts and inventory, for which Plaintiff did not receive any compensation, in the approximate amount of $25,000.

97.     In an attempt to start a business in competition with Plaintiff, Defendants have used a confusingly similar mark to that of Plaintiff's marks and interfered with existing and prospective contracts and business, all while capitalizing on Plaintiff's goodwill, recognition, and positive reputation.

98.     Defendants engaged in such conduct with an intent to confuse and deceive the public.

99.     As a result of the foregoing misconduct, the Defendants have caused and continue to cause irreparable harm and damages to Plaintiff's business.

100.    Despite multiple cease and desist letters, Defendants continue to engage in such unlawful conduct.

101.    Defendants have acted with malice and/or under circumstances amounting to a willful and wanton disregard of a Plaintiff's rights.

**COUNT I – FALSE DESIGNATION OF ORIGIN/TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT (15 U.S.C. § 1125(a)) (AS TO ALL DEFENDANTS)**

102.    Plaintiff restates and incorporates paragraphs 1-101 above as though fully restated herein.

17

103.    Defendants' use in commerce of the GNG mark is likely to cause confusion, mistake and to deceive the relevant public by suggesting that Defendants' products and services are authorized, sponsored, approved by, or are affiliated with Plaintiff.

104.    Plaintiff owns the "GNG" and "GNG Motorsports" marks through its consistent and exclusive use of such marks, which are arbitrary or otherwise inherently distinctive marks in commerce.

105.    Defendants' use of GNG is likely to cause confusion among the general public.

106.    The above-described acts of Defendants constitute unfair competition and trademark infringement of the "GNG" and "GNG Motorsports" marks and false designation of origin in violation of 15 U.S.C. § 1125(a), entitling Plaintiff to relief.

107.    Defendants have unfairly profited from the actions alleged.

108.    By reason of Defendants' acts alleged herein, Plaintiff has suffered, and continues to suffer, loss of customers, monetary damages, and loss of control of the goodwill associated with the "GNG" and "GNG Motorsports" marks.

109.    Defendant' activities have irreparably harmed and, if not enjoined, will continue to harm Plaintiff and the "GNG" and "GNG Motorsports" marks.

110.    Defendants' activities have irreparably harmed and, if not enjoined, will continue to harm the general public which has an interest in being free from confusion, mistake, and deception.

111.    By reason of Defendants' acts alleged herein, Plaintiff's remedy at law is not adequate to compensate them for the injuries inflicted by Defendants. Accordingly, Plaintiff is also entitled to preliminary and permanent injunctive relief.

18

112.    By reason of Defendants' willful acts, Plaintiff is entitled to damages, including but not limited to all damages available under 15 U.S.C. §§ 1116-17.

113.    This is an exceptional case making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

### COUNT II – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT – AGAINST DEFENDANT MCCULLEY AND DEFENDANT CHESTER DOG

114.    Plaintiff restates and incorporates paragraphs 1-113 above as though fully restated herein.

115.    As Shop Manager, Defendant McCulley's job responsibilities including managing GNG's social media presence, which included without limitation, its Facebook and Instagram business accounts.

116.    Defendant McCulley and/or Defendant Chester Dog (through Defendant McCulley) accessed a protected computer, software, and/or account, namely, Plaintiff's Facebook business page and Instagram account, knowingly and with an intent to defraud.

117.    Defendant McCulley and/or Defendant Chester Dog (through Defendant McCulley) accessed Plaintiff's business Facebook page, after his employment ended and without authorization from Plaintiff, with the intent to steal the account and/or use the "GNG" and "GNG Motorsports" marks for Defendants' benefit with the intent to harm Plaintiff.

118.    Defendant McCulley and/or Defendant Chester Dog (through Defendant McCulley) accessed Plaintiff's business Instagram page, after his employment ended and without authorization from Plaintiff, with the intent to steal the account and/or use the "GNG" and "GNG Motorsports" marks for Defendants' benefit with the intent to harm Plaintiff.

119.    Defendant McCulley and/or Defendant Chester Dog (through Defendant McCulley) has refused to return and/or assign the admin credentials to Plaintiff's Facebook page.

19

120.     Defendant McCulley and/or Defendant Chester Dog (through Defendant McCulley) deleted Plaintiff's Facebook business page, causing irreparable harm and the loss of customers.

121.     By means of Defendants' conduct, Defendant violated 18 U.S.C. §§ 1030(a)(2)(c), 1030(a)(4), 1030(a)(5)(c) and caused substantial loss aggregating at least $5,000 in value.

122.     Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff.

## COUNT III – BREACH OF FIDUCIARY DUTY OF LOYALTY (AS TO DEFENDANT MCCULLEY)

123.     Plaintiff restates and incorporates paragraphs 1-122 above as though fully restated herein.

124.     Defendant McCulley, as an employee of and the Shop Manager for Plaintiff, owed a duty of loyalty to Plaintiff.

125.     Defendant McCulley, without authorization and before his resignation of employment, solicited employees of Plaintiff to leave their employment for the purpose of starting a competing business.

126.     On information and belief, Defendant McCulley, without authorization and before his resignation of employment, solicited customers of Plaintiff to no longer seek services from Plaintiff and/or encouraged customers to seek services from Defendant McCulley and/or Defendant Chester Dog.

127.     During employment, Defendant McCulley and Defendant Vehrs devised a plan to create a rival business, using Plaintiff's goodwill and employees, in order to secure Plaintiff's current and prospective customers, knowing such a plan would devastate Plaintiff's business.

128.     Indeed, their plan included stealing Plaintiff's GNG mark to obtain Plaintiff's customers.

129.     As Shop Manager, Defendant McCulley was responsible for managing the day-to-day operations of the shop, including without limitation, maintaining and safekeeping the inventory and products of Plaintiff.

130.     During his employment, Defendant McCulley purposely delayed the vehicle claim process or contacting the owner related to an abandoned vehicle at Plaintiff's shop.  Then, after resigning his employment with Plaintiff, Defendant McCulley convinced his friend Joey Neuburger to purchase the vehicle and got in contact with the owner so Plaintiff could not claim the property, usurping Plaintiff's opportunity.

131.     In addition, Defendants McCulley and Vehrs failed to account for parts during their employment with Plaintiff and, on information belief, used some of the missing inventory for their own benefit or benefit of friends and family.

132.     The above-described acts of Defendant McCulley constitute a breach of the fiduciary duty of loyalty.

133.     By reason of Defendant McCulley's actions, Plaintiff has suffered damages.

134.     By reason of Defendant McCulley's acts alleged herein, Plaintiff's remedy at law is not adequate to compensate them for the injuries inflicted by Defendant. Accordingly, Plaintiff is also entitled to preliminary and permanent injunctive relief.

### COUNT IV – BREACH OF FIDUCIARY DUTY OF LOYALTY (AS TO DEFENDANT VEHRS)

135.     Plaintiff restates and incorporates paragraphs 1-134 above as though fully restated herein.

136.    Defendant Vehrs, as an employee of and the Service Writer for Plaintiff, owed a duty of loyalty to Plaintiff.

137.    During employment, Defendant McCulley and Defendant Vehrs devised a plan to create a rival business, using Plaintiff's goodwill and employees, in order to secure Plaintiff's current and prospective customers, knowing such a plan would devastate Plaintiff's business.

138.    Indeed, their plan included stealing Plaintiff's GNG mark to obtain Plaintiff's customers.

139.    As Service Writer, Defendant Vehrs' responsibilities included without limitation maintaining and safekeeping the inventory and products of Plaintiff.

140.    During her employment, Defendants McCulley and Vehrs failed to account for parts during their employment with Plaintiff and, on information belief, used some of the missing inventory for their own benefit or benefit of friends and family.

141.    The above-described acts of Defendant Vehrs constitute a breach of the fiduciary duty of loyalty.

142.    By reason of Defendant Vehrs' actions, Plaintiff has suffered damages.

143.    By reason of Defendant Vehrs' acts alleged herein, Plaintiff's remedy at law is not adequate to compensate them for the injuries inflicted by Defendant. Accordingly, Plaintiff is also entitled to preliminary and permanent injunctive relief.

**COUNT V – TORTIOUS INTERFERENCE WITH EXISTING AND/OR EXPECTED CONTRACTUAL RELATIONS (AS TO ALL DEFENDANTS)**

144.    Plaintiff restates and incorporates paragraphs 1-143 above as though fully restated herein.

145.    Plaintiff had a contractual expectancy with its existing customers.

146.    Defendants knew of Plaintiff's customer relationships.

147.    As described above, Defendants knowingly and intentionally interfered with Plaintiff's contractual expectancy with its customers, by, among other things, soliciting customers to leave Plaintiff's services for the services offered by Defendants, falsely using and promoting the GNG mark as Defendants' own mark in order to usurp and steal existing customers, soliciting employees of Plaintiff to leave Plaintiff, leaving Plaintiff without a staff to service existing customers, and misrepresenting to customers, vendors, and other third parties that Plaintiff closed its business.

148.    Defendants used improper means or methods to knowingly and intentionally interfere with Plaintiffs contractual expectancy with its customers, including without limitation, through breaches of Defendants McCulley and Vehrs' fiduciary duties to Plaintiff, through falsely promoting and using the GNG mark, through attempting to steal Plaintiff's social media accounts and deleting its Facebook business account, and through misrepresenting to customers, vendors, and other third parties that Plaintiff closed its business.

149.    As a result of Defendants' interference with Plaintiff's contractual expectancy, Plaintiff suffered significant loss and Plaintiff's loss has resulted in damages to Plaintiff.

150.    Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff.

**COUNT VI – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS (AS TO ALL DEFENDANTS)**

151.    Plaintiff restates and incorporates paragraphs 1-150 above as though fully restated herein.

152.    Plaintiff had a business relationship or expectancy with specifically identified customers that had a reasonable probability of resulting in future economic benefit.

23

153.   Defendants had prior knowledge of Plaintiff's prospective business relationships or expectancy.

154.   Defendants knowingly and intentionally interfered with Plaintiff's prospective business relationship or expectancy, by, among other things, soliciting customers to leave Plaintiff's services for the services offered by Defendants, falsely using and promoting the GNG mark as Defendants' own mark in order to usurp and steal prospective customers based on Plaintiff's existing goodwill, soliciting employees of Plaintiff to leave Plaintiff, leaving Plaintiff without a staff to service Plaintiff's prospective customers, and misrepresenting to customers, vendors, and other third parties that Plaintiff closed its business.

155.   Defendants used improper means or methods to knowingly and intentionally interfere with Plaintiff's business expectancy, including without limitation, through breaches of Defendants McCulley and Vehrs' fiduciary duties to Plaintiff, through falsely promoting and using the GNG mark, through attempting to steal Plaintiff's social media accounts and deleting its Facebook business account, and through misrepresenting to customers, vendors, and other third parties that Plaintiff closed its business.

156.   Absent Defendants' intentional misconduct, Plaintiff would have continued in the relationships or realized the expectancy.

157.   As a result of Defendants' interference with Plaintiff's business expectancy, Plaintiff suffered loss and that loss has resulted in damages to Plaintiff.

158.   Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff.

24

## COUNT VII – UNFAIR COMPETITION (AS TO ALL DEFENDANTS)

159.    Plaintiff restates and incorporates paragraphs 1-158 above as though fully restated herein.

160.    Defendants' use in commerce of the GNG mark is likely to cause confusion, mistake and to deceive the relevant public by suggesting that Defendants' products and services are authorized, sponsored, approved by, or are affiliated with Plaintiff.

161.    The GNG mark is an arbitrary or otherwise inherently distinctive mark in commerce.

162.    Defendants' use of the GNG is likely to cause confusion among the general public.

163.    The above-described acts of Defendants constitute unfair competition under Virginia common law.

164.    Defendants have unfairly profited from the actions alleged.

165.    By reason of Defendants' acts alleged herein, Plaintiff has suffered monetary damages and loss of control of the goodwill associated with the GNG mark.

166.    Defendant' activities have irreparably harmed and, if not enjoined, will continue to harm Plaintiff and the GNG mark.

167.    Defendants' activities have irreparably harmed and, if not enjoined, will continue to harm the general public, which has an interest in being free from confusion, mistake, and deception.

168.    By reason of Defendants' willful acts, Plaintiff is entitled to damages.

## COUNT VIII – TRADEMARK INFRINGEMENT IN VIOLATION OF VIRGINIA TRADEMARK AND SERVICES ACT (AS TO ALL DEFENDANTS)

169.    Plaintiff restates and incorporates paragraphs 1-168 above as though fully restated herein.

170.    Defendants' use in commerce of the GNG mark is likely to cause confusion, mistake and to deceive the relevant public by suggesting that Defendants' products and services are authorized, sponsored, approved by, or are affiliated with Plaintiff.

171.    The GNG mark is an arbitrary or otherwise inherently distinctive mark in commerce.

172.    Defendants' use of the GNG is likely to cause confusion among the general public.

173.    The above-described acts of Defendants constitute unfair competition and a violation of the Virginia Trademark and Service Mark Act, Virginia Code § 59.1–92.12.

174.    Defendants have unfairly profited from the actions alleged.

175.    By reason of Defendants' acts alleged herein, Plaintiff has suffered monetary damages and loss of control of the goodwill associated with the GNG mark.

176.    Defendant' activities have irreparably harmed and, if not enjoined, will continue to harm Plaintiff and the GNG mark.

177.    Defendants' activities have irreparably harmed and, if not enjoined, will continue to harm the general public, which has an interest in being free from confusion, mistake, and deception.

178.    By reason of Defendant' willful acts, Plaintiff is entitled to damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendants and order as follows:

A.    That the Court issue preliminary and permanent injunctive relief against Defendants:

26

i.      enjoining Defendants McCulley and Vehrs (and Defendant Chester Dog through McCulley and Vehrs) from further breaches of their common law obligations to Plaintiff;

ii.     enjoining all Defendants from interfering with Plaintiff's relationships with its customers and prospective customers;

iii.    enjoining Defendants from infringing on and using Plaintiff's trademarks and service marks, including the "GNG" and "GNG Motorsports" marks;

iv.     enjoining Defendants from utilizing the "GNG" and "GNG Motorsports" name and brand in any capacity and holding out themselves to be working on behalf of Plaintiff;

v.      enjoining Defendants from misrepresenting to any person or entity, including existing and potential vendors and customers of Plaintiff, that Plaintiff has ceased operating a business;

vi.     enjoining Defendants from accessing Plaintiff's social media accounts, including without limitation, its Facebook and Instagram business pages;

vii.    require Defendant McCulley to restore Plaintiff's Facebook business page and/or work with Facebook and Plaintiff in good faith to have Facebook restore the Facebook business, and return and/or assign the admin credentials to Plaintiff;

viii.   enjoining Defendants from assisting, aiding, or abetting any other person or business entity from engaging in or performing any of the activities referred to in subparagraphs i though vii above;

B.      That the Court award Plaintiff actual damages, consequential damages, and statutory damages based on Defendants' unlawful conduct, in an amount to be determined at trial, but not less than $100,000, under all applicable statutes and available at law, including without limitation, all damages available under 15 U.S.C. §§ 1116-17 and 18 U.S.C. § 1030;

C.      That the Court order Defendants to disgorge all ill-gotten gains;

D.      Given that Defendants have acted with malice and/or under circumstances amounting to a willful and wanton disregard of a Plaintiff's rights, that the Court award punitive damages in an amount to be determined at trial;

E.      That the Court award Plaintiff its attorneys' fees and costs pursuant to 15 U.S.C. § 1117 and/or any other statute, regulation, or precedent authorizing the award of attorneys' fees and costs; and

F.      That the Court grant Plaintiff all other relief to which it is entitled and such other or additional relief as is just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all counts set forth herein.


                                            Respectfully submitted,

                                    By:     /s/ Mark J. Passero

                                            Mark J. Passero (VSB No. 90463)
                                            Passero Employment Law, PLLC
                                            14321 Winter Breeze Drive, Suite 98
                                            Midlothian, Virginia 23113
                                            Ph: (804) 277-4524
                                            Fax: (804) 251-2126
                                            mpassero@passerolaw.com

                                            *Counsel for Plaintiff*

## VERIFICATION

I, Joshua Barnhill, the sole member and officer of Good 'Nuff Garage, LLC *dba* GNG Motorsports, am authorized to make this verification on behalf of GNG Motorsports, and I hereby affirm that (i) the facts contained in the foregoing Complaint are true and correct to the best of my knowledge and belief and are based on my personal knowledge, and (ii) as to those matters based on information and belief, I believe them to be true or understand them to be true and correct to the best of my knowledge, as well as the knowledge of the Plaintiff, its agents and representatives, and based on Plaintiff's business records.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2021.

Joshua Barnhill
Sole Member of GNG Motorsports